FILED
2012 Jun-13 AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FILED
2012 JUN 12 P 4:05
DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SCOTTSDALE INDEMNITY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MARTINEZ, INC. | § | CV-12-BE-2146-S |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Scottsdale Indemnity Company ("Scottsdale"), Plaintiff in the captioned cause, brings this lawsuit pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment against Martinez, Inc. ("Martinez"), and respectfully shows the Court as follows:

## I.
## NATURE OF ACTION

1. This lawsuit involves the rights and obligations of the parties under a Business Management Indemnity Policy (the "Policy") issued by Scottsdale to Martinez. Martinez submitted a claim for loss to Scottsdale under the Policy seeking recovery for a loss exceeding $2.2 million allegedly resulting from the theft of company funds by Brenda J. Walters ("Walters"), its former CEO/CFO. After an investigation of the submitted claim, Scottsdale denied Martinez's claim, and now requests this Court to declare that the Policy does not provide coverage for the losses allegedly incurred by Martinez.

## II. PARTIES

2. Scottsdale is a Ohio corporation with its principal place of business in Columbus, Ohio. The Policy at issue in this lawsuit is not a liability insurance policy. Therefore, Scottsdale is a citizen of Ohio, but it is not a citizen of Alabama.

3. Martinez is an Alabama corporation with its principal place of business in Alabama. Therefore, Martinez is a citizen of Alabama, but it is not a citizen of Ohio.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Complete diversity exists between the parties and the facts demonstrate that the amount in controversy exceeds $75,000, exclusive of interest and costs. An actual and justiciable controversy exists between the parties.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Martinez resides in, and a substantial part of the events giving rise to this dispute occurred in, the United States District Court for the Northern District of Alabama, Southern Division.

## IV. FACTUAL ALLEGATIONS

6. Scottsdale issued the Policy, a Business and Management Indemnity Liability Policy, No. EKI 3024660, to Martinez with an effective date of September 15, 2010, to September 15, 2011. A true and accurate copy of the Policy is attached hereto as **Exhibit 1** and incorporated herein by reference.

7. By written notice dated September 8, 2011, Martinez notified Scottsdale that it had incurred a loss as a result of Employee Theft by unidentified employees.

8. On or about January 4, 2012, Martinez submitted to Scottsdale its original Proof of Loss, seeking indemnification under the Bond for its $2,201,070.04 loss of company funds allegedly embezzled by Brenda Walters ("Walters"), its former CEO and CFO. A true and accurate copy of the Proof of Loss, less exhibits, is attached hereto as **Exhibit 2** and incorporated herein by reference.

9. Subsequently, Scottsdale requested additional information and conducted an investigation into the claim submitted by Martinez. During the course of its claim investigation, Scottsdale discovered that Walters, who had signed the written policy application submitted to Scottsdale by Martinez, had answered falsely key questions on the policy application pertaining to the division of responsibilities concerning the handling of bank accounts and regarding the conduct of annual outside audits of its books and records and bank balances. These misrepresentations by Walters were material to the crime risk being underwritten and the absence of such controls facilitated Walters' thefts of company funds by allowing her to embezzle funds from company bank accounts and to continue such embezzlements undetected by Martinez for years.

10. By letter dated June 12, 2012, to Richard Bearden, counsel for Martinez (the "Denial Letter"), Scottsdale notified Martinez that, having considered Martinez's Proof of Loss and other documents and information provided by Martinez, the false statements in the policy application signed by Walters and their direct connection to the loss, and the effect of Walters' knowledge of her own thefts prior to inception of the Policy, there was no coverage for Martinez's loss under the Policy, and that Scottsdale denied Martinez's claim. A true and accurate copy of the Denial Letter is attached hereto as **Exhibit 3** and incorporated herein by reference.

## V.
## CONTROVERSY AND RIPENESS

11. Martinez continues to assert its entitlement to coverage under the Policy for its loss of company funds due to Walters' embezzlements. Scottsdale now seeks a declaratory judgment from this Court declaring that there is no coverage for Martinez's claim, either for the reasons stated in the Denial Letter, or based upon other provisions of the Policy or other applicable law.

## VI.

## COUNT I

## DECLARATORY JUDGMENT THAT MARTINEZ'S CLAIM IS NOT COVERED BECAUSE OF MARTINEZ'S FALSE STATEMENTS IN THE POLICY APPLICATION

12. Scottsdale incorporates herein by reference each of the allegations contained in Paragraphs 1 through 11 of this Complaint as though specifically alleged herein.

13. The policy application submitted by Martinez to obtain issuance of the Policy was completed and signed by Walters, the former CEO and CFO of Martinez. A true and accurate copy of the policy application is attached hereto as **Exhibit 4** and is incorporated herein by reference. In the Crime Coverage Section of the policy application, Martinez was specifically asked a series of questions to which Walters provided the following responses on behalf of Martinez:

**Crime Coverage Section Information**

Is the Parent Company seeking Crime coverage? ☑ Yes ☐ No

If yes, please answer the following questions.

1. Total number of employees:

| | | | |
|---|---|---|---|
| ___ | 0 to 10 | ___ | 151 to 225 |
| ___ | 11 to 30 | ___ | 226. to 300 |

| | | | |
|---|---|---|---|
| ___ | 31 to 50 | ___ | 301 to 400 |
| ___ | 51. to 75 | ___ | 401 to 500 |
| _x_ | 76 to 100 | ___ | over 500 |
| ___ | 101 to 150 | ___ | Exact number if over 500 |

2. Number of officer and employees who handle, have custody or maintain records of money, securities or other of money, securities or other property:

| | |
|---|---|
| _x_ | 0 to 5 |
| ___ | 6 to 15 |
| ___ | 16 to 50 |
| ___ | over 50 |

| | | | |
|---|---|---|---|
| **3.** | **Is there an annual audit or review performed by an independent CPA on the books and accounts, including a complete verification of all securities and bank balances?** | **☑ Yes** | **☐ No** |
| **4.** | **Are bank accounts reconciled by someone not authorized to deposit or withdraw from those accounts?** | **☑ Yes** | **☐ No** |
| 5. | Is counter signature of checks required? | ☐ Yes | ☑ No |
| 6. | Is the applicant seeking Employee Benefit Plan Crime coverage? | ☐ Yes | ☑ No |
| 7. | Are pre-authorized controls maintained for all programmers and operators? | ☑ Yes | ☐ No |
| 8. | Do audit practices include tests to detect unauthorized programming changes? | ☐ Yes | ☑ No |
| 9. | Are computerized check writing operations segregated from departments that authorize checks? | ☐ Yes | ☑ No |

(Emphasis added)

14. The affirmative responses to questions 3 and 4 above, were false. In actuality, despite representations to the contrary, the books and records of Martinez were not audited or reviewed by an independent CPA at least annually. Further, Martinez did not maintain a separation of duties concerning the handling of its bank accounts, such that Walters was allowed to both write checks and was the sole individual responsible for reconciliation of Martinez's bank accounts. As a result, Walters was able to perpetrate her embezzlement scheme apparently undetected by Martinez's owners for at least five years.

15. The policy application, according to its terms, is made a part of the Policy. It specifically states:

**IV. Other Information**

1. *The undersigned declares that to the best of his/her knowledge the statements herein are true . . . .*

2. *It is warranted that the particulars and statements contained in the Application for the proposed Policy* and any materials submitted herewith (which shall be retained on files by Insurer and which shall be deemed attached hereto, as if physically attached hereto), are the basis for the proposed Policy and *are to be considered as incorporated into and constituting a part of the proposed Policy.*

. . . .

4. *It is agreed that in the event there is any misstatement or untruth in the answers to the question contained herein, Insurer have the right to exclude from coverage any claim based upon, arising out of or in connection with such misstatement or untruth.*

(Emphasis in italics).

16. Martinez's false statements concerning questions 3 and 4, as set forth above, materially misrepresented the risk for which coverage was sought from Scottsdale. Scottsdale relied on these statements in issuing the Policy and made them a basis of the contract for coverage.

17. The claim submitted by Martinez for Walters' alleged embezzlement of company funds, for which Martinez now seeks coverage, is directly based upon, arising out of and connected with these false responses. Walters accomplished her embezzlements principally by writing unauthorized checks on Martinez's bank accounts, which funds she diverted to herself and her associates. Martinez's failure to schedule any outside audits of its books and records, much less regular annual audits as represented, and to permit Walters' control of all aspects concerning Martinez's bank accounts, including both check writing and reconciliation functions, allowed Walters to

perpetrate her embezzlement scheme. Her dishonest conduct would have been either prevented or detected long before issuance of the Policy, had such controls been maintained by Martinez as was represented because Walters would have been unable to conceal her embezzlements.

18. Because Martinez falsely answered questions 3 and 4 in the Crime Coverage Section of the policy application, all losses based upon, arising out of or connected to such false statements are excluded from coverage. Because the claimed loss is directly based upon, arising out of or connected to such false statements in the policy application, it is excluded from coverage.

19. Therefore, for the foregoing reasons, Scottsdale is entitled to a judgment declaring that Martinez's claimed losses are not covered under Policy and are excluded from coverage due to Martinez's false statements in the policy application.

**COUNT II**

**DECLARATORY JUDGMENT THAT MARTINEZ'S CLAIM IS NOT COVERED DUE TO MARTINEZ'S FRAUD IN THE APPLICATION FOR THE POLICY**

20. Scottsdale incorporates herein by reference each of the allegations contained in Paragraphs 1 through 19 of this Complaint as though specifically alleged herein.

21. As the sole representative of Martinez in completing the policy application, Walters' prior knowledge of her thefts and her fraudulent conduct in falsely completing the application, and in applying for theft coverage for her previous and continuing thefts, is imputed to Martinez under general agency principles. Martinez is estopped to claim coverage for Walters' thefts by reason of said fraud in the application for the Policy.

Further, to allow coverage for Walters' thefts under such circumstances would further reward the fraud and violate established public policy.

22. Therefore, for the foregoing reasons, Scottsdale is entitled to a judgment declaring that coverage for Martinez's claim is precluded by reason of Martinez's fraud in the application for the policy and/or that Martinez is estopped by reason of such fraud from asserting its claim for coverage.

## COUNT III

## DECLARATORY JUDGMENT THAT MARTINEZ'S CLAIM IS NOT COVERED BECAUSE DISCOVERY OCCURRED BEFORE INCEPTION OF THE POLICY DUE TO WALTER'S KNOWLEDGE OF HER OWN DISHONEST ACTS

23. Scottsdale incorporates herein by reference each of the allegations contained in Paragraphs 1 through 22 of this Complaint as though specifically alleged herein.

24. Pursuant to Insuring Clause A.1.a of the Policy, Scottsdale agreed to indemnify Martinez for:

**a. Employee Theft**

The **Insurer** will pay for loss or damage to **Money**, **Securities** and **Other Property** resulting directly from **Theft** or **Forgery** by any identifiable **Employee** while acting alone or in collusion with others.

25. The Policy defines **Theft** as the "unlawful taking of **Money, Securities,** or **Other Property** from the **Insured** to the deprivation of the **Insured**. . . ."

26. Martinez's claim, as asserted in its Proof of Loss, is based upon alleged thefts by Walters while she was employed by Martinez as its CEO and CFO. Such loss, to be covered, under General Agreement D of the Policy, must have been first discovered by Martinez within the policy period. Martinez alleges that Walters' thefts, and its loss, were first discovered on approximately August 15, 2011, when Walters'

embezzlements were first revealed to its president and principal owner, Gregory L. Martinez. However, as the sole representative of Martinez in applying for the Policy and completing the policy application, Walters' knowledge is imputed to Martinez. Also, because Walters was an officer of Martinez, pursuant to the policy provisions, her knowledge is Martinez' knowledge. Because Walters' alleged thefts began long before inception of the Policy, Martinez's prior knowledge precludes coverage under the Policy for the alleged embezzlements.

27. General Agreement D of the Policy provides:

> Discovery
>
> *The* ***Insurer*** *will pay for loss sustained by the* ***Insured*** *through acts committed or events occurring at any time and discovered by the* ***Insured*** *during the* ***Policy Period****. Discovery of loss occurs when an officer,* director, Insurance Manager or Risk Manager *first becomes aware of facts of which would cause a reasonable person to assume that a loss covered by this Crime Coverage Section has been or will be incurred,* even though the exact amount or details of such loss may not then be known. Discovery also occurs when the **Insured** receives notice of an actual or a potential claim against it alleging facts that, if true, would constitute a covered loss under this Crime Coverage Section.

(Emphasis in italics).

28. Further, Section D. OTHER CONDITIONS, 1(b) of the Policy provides:

> 1. Joint **Insured**
>
> . . .
>
> b. If any **Insured**, or any partner, officer or director of that **Insured**, has knowledge of any information relevant to this Crime Coverage Section, that knowledge is considered knowledge of every **Insured**.

As CEO and CFO of Martinez, and as Martinez's sole representative in completing the policy application, Walters' knowledge of her thefts was Martinez's knowledge and constituted discovery of the loss. Because Walters' (and, therefore, Martinez's)

knowledge of the thefts predated the inception of the Policy, discovery occurred prior to inception of the policy period, precluding coverage under the Policy for Martinez's claim. Therefore, for the foregoing reasons, Scottsdale is entitled to a judgment declaring that Martinez's claimed losses are not covered under Policy because they were discovered outside, and prior to, the policy period of the Policy.

## VII.
## OTHER COVERAGE DEFENSES

29. Other terms and conditions of the Policy may ultimately be implicated. By seeking a declaration of coverage with respect to the issues identified in this Complaint, Scottsdale in no way waives, and expressly and fully reserves, the right to rely on any other such provisions of the Policy. Nothing in this Complaint should be construed as a waiver by Scottsdale of any other coverage defenses under the Policy or at law.

Wherefore, for the foregoing reasons, Scottsdale Insurance Company respectfully requests that the Court enter a declaratory judgment in its favor as set forth above, declaring that there is no coverage for Martinez's losses under the Policy for the reasons set forth above, and awarding Scottsdale its costs and such other and further relief, both at law and equity, to which this Court may find Scottsdale to be justly entitled.

Respectfully submitted,

**WAYNE MORSE, JR.**
**MICHAEL G. KENDRICK**
Waldrep, Stewart & Kendrick, LLC
2323 Second Avenue North
Birmingham, AL 35203
Telephone: (205) 254-3216
Telecopier: (205) 327-3802

**MICHAEL KEELEY**
Texas State Bar No. 11157800
*(pro hac vice motion pending)*
**DUNCAN L. CLORE**
Texas State Bar No. 04404500
*(pro hac vice motion pending)*
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, TX 75202-3794
Telephone: (214) 651-4300
Telecopier: (214) 651-4330

**ATTORNEYS FOR PLAINTIFF
SCOTTSDALE INDEMNITY COMPANY**

**SERVICE INFORMATION:**

Martinez, Inc.
Through its agent for service:
Greg Martinez
6905 Katelyn Circle
Pinson, AL 35126