FILED
2013 Jan-29 PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| **SCOTTSDALE INDEMNITY CO.,** | ] | |
| | ] | |
| **Plaintiff & Counterclaim Defendant,** | ] | |
| | ] | |
| **v.** | ] | **2:12-cv-2146-KOB** |
| | ] | |
| **MARTINEZ, INC.,** | ] | |
| | ] | |
| **Defendant and Counterclaim Plaintiff.** | ] | |
| | ] | |
| | ] | |
| | ] | |
| | ] | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on "Scottsdale Indemnity Company's Second Motion to Dismiss Martinez's Amended Counterclaim." (Doc. 19). Plaintiff Scottsdale argues that the court should dismiss Defendant Martinez, Inc.'s bad faith counterclaim because Martinez has failed to plead the claim with the requisite specificity and has failed to state a claim upon which relief can be granted. Scottsdale argues that its bad faith claim should not be dismissed because it is not subject to the heightened pleading standard of Rule 9(b) and because it sufficiently apprises Scottsdale of the claim against it. The court agrees that Rule 9(b) does not apply to bad faith claims and that Martinez's amended counterclaim adequately puts Scottsdale on notice of the counterclaim asserted against it. For these reasons as more fully stated below, the court will DENY the motion to dismiss.

I.    STATEMENT OF FACTS

This action is a dispute over an unpaid insurance claim. Plaintiff Scottsdale issued to Defendant Martinez a renewal of Business and Management Indemnity Policy ("The Policy") on September 15, 2010; coverage under that policy extended from September 15, 2010 to September 15, 2011.  Under the Policy, Scottsdale agreed to pay for "loss or damage to Money, Securities, and Other Property resulting directly from Theft or Forgery by any identifiable Employee while acting alone or in collusion with others." ("Business and Management Indemnity Policy," Doc. 1-1, at 36). On or about August 15, 2011, Martinez discovered that an employee had stolen money from Martinez. In compliance with the notice terms of the Policy, Martinez notified Scottsdale of the loss and abided with all other duties owed to Scottsdale with regard to the claim.

From February to June 2012, Scottsdale investigated the claim through an independent accounting firm. During that time, the accounting firm provided reports on the scope and validity of the loss to Cheryl Lanier, a Scottsdale agent. On June 12, 2012, Scottsdale notified Martinez of the denial of its claim for loss. Martinez alleges that Scottsdale "sought an opinion upon which it based its denial as a pretext in order to avoid paying a valid claim" and that Scottsdale's purported reasons for denying the claim "were based upon factually incorrect information." (Doc. 18, at 9, 10).

Scottsdale brought this action against Martinez seeking a declaratory judgment that no coverage exists for Martinez's losses under the Policy, and then Martinez filed bad faith and breach of contract counterclaims against Scottsdale. Scottsdale filed a motion to dismiss Martinez's counterclaims, or alternatively, for a more definite statement. (Doc. 16). The court

denied the motion to dismiss but granted the motion for more definite statement. (Doc. 17).

Martinez filed amended bad faith and breach of contract claims against Scottsdale, alleging that

Scottsdale "intentionally, and without legitimate or arguable reason" denied its claim and

"intentionally failed and refused" to pay the claim. (Doc. 18, at 11).  Scottsdale then filed the

instant motion to dismiss Martinez's bad faith counterclaim. (Doc. 19).

II.    STANDARD OF REVIEW

        A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short

and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's

claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957)

(quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule

8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662,

678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of

a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely

upon "labels or conclusions" or "naked assertions" without supporting factual allegations.

*Twombly*, 550 U.S. at 555, 557.

        The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).

To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw

3

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678.   The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts.  That task  is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

III.    DISCUSSION

Scottsdale argues that Martinez's bad faith claim, as a species of fraud, must comport with the heightened pleading standard for allegations of fraud. When a party alleges fraud or

4

mistake, the "party must state with particularity the circumstances constituting fraud or mistake" but "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). Scottsdale does not cite any case stating that bad faith failure to pay claims are subject to the heightened pleading requirements for claims of fraud. Certainly, the Alabama Supreme Court has made clear that bad faith claims are a subset of fraud claims, but no case states that bad faith claims are subject to Rule 9(b)'s requirements.

Martinez points the court to the recent decision of *Austin v. Auto Owners Ins. Co.*, 2012 WL 3101693 (S.D. Ala. 2012). In that case, Judge Steele held that Rule 9(b) had no role in bad faith claims. *Id.* at *3, n. 7. This court agrees with Judge Steele's reasoning that

> In an ordinary fraud case, the Rule 9(b) who/ what/when/where specificity is necessary to apprise the defendant of what it is alleged to have done wrong. Without knowing the particulars of the fraudulent statement it is accused of making, a defendant cannot respond properly. Here, however, [the insurer] knows exactly what [the insured] contends it did wrong, with regard to a specific policy number and claim, plus [the insured's] allegations that there was no arguable basis for not paying the claim and that [the insurer] knew it. Armed with this kind of pleading detail, defendant is fully equipped to prepare a defense, and cannot plausibly profess to be in the dark as to [the insured's] claim. Rule 9(b) has no role here.

*Id.* Here, Scottsdale, as the insurer in Austin, cannot be "in the dark" as to the facts surrounding Martinez's counterclaim because Scottsdale filed the original Complaint in the controversy. This court will not require Martinez' bad faith claim to comport with Rule 9(b)'s heightened pleading requirement. Therefore, the court will analyze whether Martinez's bad faith claim states a claim upon which relief can be granted.

Under Alabama law, the insured bringing a claim of bad faith against its insurer must prove the following elements: "(a) an insurance contract between the parties and a breach thereof

by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001). The Alabama Supreme Court has further elaborated that "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Farr v. Gulf Agency*, 74 So. 3d 393, 403 (Ala. 2011)(citing *Nat. Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)).

In this case, the parties inherently recognize the existence of a valid insurance contract but argue over whether Scottsdale breached that contract. Martinez pled that it incurred a covered loss when its employee stole money from the company; that Scottsdale owed it benefits under the Policy; and that Scottsdale refused to pay the covered claim. Martinez specifically alleges that Scottsdale "intentionally, and without legitimate or arguable reason" refused to pay and denied its claim. (Doc. 18, at 11). Martinez's allegation that Scottsdale's given reason for denying its claim was pretext alleges by inference that Scottsdale did not have or know of any legitimate reason to deny the claim.

This pleading goes well beyond the mere conclusory allegation that Scottsdale simply denied Martinez's claim in bad faith. The second amended counterclaim alleges "a valid

insurance policy, a covered loss, a timely claim, a lack of any reasonable basis for denying the claim, a lack of reasonable basis for denying the claim, and knowledge of these facts by the defendant." *Austin,* 2012 at *5. These allegations put Scottsdale on notice of the claim against it, especially in this case where the underlying insurance policy is the subject of the action originally brought by Scottsdale. Assuming the veracity of the well-pled allegations, Martinez stated a viable bad faith counterclaim against Scottsdale.

IV.   CONCLUSION

The court refuses to apply Rule 9(b)'s heightened pleading standard to Martinez's bad faith counterclaim, and under Rule 8's pleading standards, Martinez states a viable bad faith claim against Scottsdale. For these reasons, the court will DENY Scottsdale's motion to dismiss and will simultaneously enter an order to that effect.

DONE and ORDERED this 29th day of January, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

7